Judge Marshall
delivered the opinion of the Court.
The will of Humphrey Tunstall, admitted to probate in February, 1850, contains among others, the following clause:
“I emancipate and set free my several negroes here mentioned, say, Squire, Jack, &c , (naming seven,) provided they give the Madison County Court good and sufficient security for their maintenance and good behavior-. And if they should fail to comply with the above requisition, I give them all to Humphrey T. Hill, son of Harrison and Patsey Hill, as slaves for life.”
At the April term, 1850, of the Madison County Court, five of the negroes emancipated by the foregoing clause, offered in that Court, to execute separate bonds with security as required by the will. And the record from that Court states, that, having heard the statement of one of the executors who refused to give his assent as required by the statute, the Court refused to permit the bond to be executed and to grant certificates of freedom. On the same day, the five negroes whose application had been thus refused, filed this bill in equity against the executors of Humphey Tunstall, in which they state, in addition to the foregoing facts, that the testator was not indebted to the amount of $100, and left a large estate in lands and personalty worth thousands of dollars, and that the executors are in fact willing for them to be free, and they pray for general relief, and offer to execute proper bonds.
The executors do not controvert any of the facts alleged in the bill, but in effect admit them, and say they *558 neither assented or- dissented in the County Court, but that they withheld their assent on account of the short-period which had elapsed from the testator’s death, and not being fully acquainted with his affairs, they were unwilling-to incur responsibility by immediate and absolute- assent, and' because they had in fact taken no control over tire complainants, but had let them go about as free- persons.
IT. T. Hill,Jibe contingent d'evisee under the clause of the-will above quoted, and otherwise the principal devisee in the will, was made a defendant on his petition„and after filing a demurrer, which was overruled, contested- by answer and cross bill, the right of the complainants to any relief, on, the-ground that they had not complied with the condition prescribed for their emancipation, and insisting that bond had not been tendered in propel” time,, no-ir with good security ; that all the seven were required by the will to give bond so as to bind all for each, or at least- that all must give bond, and that if this were not done, all were devised to him. He also insists that he is entitled to the hire of the seven from the-death of the-testator, and prays for a decree against the executors, &c.
The Chancellor having in an, interlocutory decree expressed the opinion that the County Court should have allowed the complainants to execute bonds,. &c.,. that their rights could not be prejudiced by the improper refusal .of their offer, but that in equity the offer made in good faith vested the right of freedom, subject still to the condition of executing the bonds as required, time was given until the next term for the complainants to execute their bonds with security, &e., in the Court of equity, or to produce evidence of their having done so in the County Court. In either of which alternatives it was intimated that such further decree would be rendered as might be necessary for effectuating their freedom before the next term the County Court, acting in conformity with this decree, and as it would seem, under the idea that it was mandatory upon them,., ac *559 cepted bonds executed by the complainants with security, &c. And at the March term, 1851, it was finally decreed in this case that the complainants have then-freedom that the cross bill of H. T. Hill be dismissed and that he pay to the complainants, their costs, &c.
Where the exec, utor improperly refuses to give his assent in the County Court to the freedom Of a slave emancipated by will, the chancellor has jurisdiction to coerce the requisite assent.
Upon the emancipating clause in the will, we are of opinion that freedom is given to ¡the slaves severally, and that each one upon compliance with the condition prescribed, is free as far as the testator could make him so. He emancipates the several negroes named upon their executing bond. Looking to the nature of the right or benefit conferred, and to the language used, the obvious meaning is, that he emancipates each and any one upon the performance of the condition as applicable tooach and any one. The word riheir,’ and other similar words, are often used in this manner to avoid circumlocution, and it is therefore often necessary to construe such words distributively. Of this, the statute of descents presents numerous examples- The •concluding words of the emancipating clause are not sufficient to change this construction of the first part. Even if the word “they” in the latter part of the clause means “all of them,” this would merely show that H.T. H-ill was to have all, only in case they should all fail to comply with the requisition, which would not be at all inconsistent with the devise of freedom to each, upon his or her compliance.
It is not requisite that the seven negroes named in the clause should be bound for each other, or that each should become free, in order that any one might be free. And that the complainants offered to execute bonds without unreasonable delay, is manifest notonly from the fact that a very short interval had elapsed after the probate, within which they were to look .about for security, but also from the fact that the executors were not ready oven when the offer was made, to determine whether they would assent to the emancipation. But it now appears that they ought to have assented. They admit that the other estate of the *560 testator, besides the seven negroes conditionally emancipated, was, and is, amply sufficient to pay his debts. They show no reason why they should not assent to the emancipation as directed by the will. And they do, by their answer virtually assent. Then, as under the act of 1841, (3 Statute Law 226,) it was not the duty of the County Court to accept the bonds and grant certificates of emancipation without the assent of the executors, which was withheld, and as the same statute expressly authorizes a bill in chancery by slaves emancipated, to coerce the assent of the executors when improperly withheld, the, Court of Equity had undoubted jurisdiction of this case .for that purpose, if for no other. And although the bill does not specifically pray for such coercion, yet, as it shows sufficient ground for it, and prays for general relief, there is enough to sustain the jurisdictioú of the Court, and the demurrer, was properly overruled.
The right to free-doom exists from the dale of the valid offer to execute the reques ted bond in such ease.
The County Court having ao-septed the seou-rity and .taken the proper bond in conformity with an interlocutory thenee in the ease (he free dom of the complainant is completed.
*560 The sufficiency of the security offered by the complainants in the first instance, and which was denied by the answer of Hill, was material in- this case only for the purpose of showing that there had been a sufficient as well as timely offer to comply with the condition prescribed by the will. As this was satisfactorily established by the evidence, the offer, though not accepted at the time, and therefore not making them absolutely free, must be regarded as a complete tender of performance on their .part; and as they proceeded without delay, and in a legal manner to consúmate their rights by coercing or procuring an acceptance of their offer, and thus actually performing the condition, we are of opinion that the entire proceeding and the final performance of the condition by the execution of bonds accepted by the County Court, relate back to the valid offer of performance originally tendered, and have the same effect in vesting and completing the right to freedom as if the performance tendered had been at once’executed and accepted.
Where slaves emancipated by will are hired out until the executor assent to freedom, the hive is for the benefi t of the emancipa ted upon it» eon. sumation.
It is Unnecessary to decide whether, if the County Court had not accepted 'the bonds during the progress of the suit, the Court of Equity could have granted any other relief than thát of coercing the assent of the executors, or of decreeing that their answer contained a sufficient assent, and thus removing the obstruction to the action of the County Court. Nor is it material to enquire under what motives this last named Court accepted 'the bonds. The answer of the executors and the interlocutory decree, constituted proper grounds for their accepting sufficient bonds and granting certificates of freedom. And if they supposed the decree to be compulsory, this mistake does not vitiate their act. The execution and acceptance of the bonds in the County Court completed the performance of the condition imposed by the will, and entitled the complainants absolutely to their freedom.
The County Court having accepted the bonds, a decree declaring as the consequence, that the complainants h-ave their freedom seems to have been an appropriate termination of their suit. And even if the decree imports more than the mere declaration of a fact, it can prejudice no one.
With regard to the claim of H. T. Hill to the hire of the complainants from the death of the testator, it Ss sufficient to say that the statute of 1841, although it requires the executors to hire out slaves emancipated by will until they are satisfied that there is other estate ■sufficient to pay the debts, etc., expressly enacts what would be otherwise the dictate of equity that the hire shall be for the benefit of the emancipated slave, if the executor becomes satisfied that the other estate is sufficient. S.o that Hill, on this ground as well as because he is not entitled to the complainants, has no right to charge the executors with hire for the time that they permitted the complainants to go free, or for the time that they were hired out under the order of the Court, and certainly cannot complain, as he has done in this Court, that the decree makes no disposition of this hire, ex *562 cept for payment of fees, etc. As Iiill is the only party who opposed the relief sought by the complainants, and as he' has failed in every ground assumed for this opposition,'and'also in every claim set up in his cross bill, it was' ceitainly right to decree against him all the cost of thecomplainants in their contest with him-; and he might'hirve been decreed to pay eosts of the executors-¡on'his -cross bill, which was not done. The •complainants, however, incurred a small amount of costs before Hill became a party, and as it does not appear that he had any agency in defeating their original attempt to comply with the condition of their emancipation, he should not be made liable for the costs incurred in the suit against the executors before he came into it. But for all costs subsequently 'incurred by the complainants, both m'their-orjginal bill and on his cross bill, he is justly /liable.
Field, Runyan, and Burnam for plaintiff, Turner for defendant*,
Wherefore the decree, except as to the costs, is affirmed, 'but so far as respects the costs, the decxce is reversed, and the cause remanded with directions to decree the costs as above indicated. And in this Court the defendants in eri’or are entitled to one-half of their costs.